UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

DANIELLE B., individually and as parent
and guardian of I.B., a minor,

    Plaintiffs,

    v.

LAFAYETTE SCHOOL CORPORATION,
*et al*.,

    Defendants.

Case No. 4:26-CV-014-GSL-JEM

## OPINION AND ORDER

This matter is before the Court on the Motion to Dismiss Plaintiffs' Second Cause of Action [DE 25] filed by Defendants, Lafayette School Corporation[1] and Anthem Insurance Companies, Inc. d/b/a Blue Cross and Blue Shield of Indiana (hereinafter referred to as "Anthem"), on October 6, 2025. Plaintiffs responded [DE 33] on October 7, 2025, and Defendants filed their reply on November 7, 2025. On January 15, 2026, a hearing was held on the instant motion. [DE 44]. For the reasons set forth below, the Motion is **DENIED**.

## BACKGROUND

*Factual History*

### A. The Plan

Plaintiff, Danielle B., is the mother of I.B., a minor. [DE 13 at ¶¶ 1-2]. At all relevant times, Danielle B. was employed by Lafayette School Corporation ("School"). [*Id*. at ¶ 3]. As an employee of the school, Danielle B. participated in the Lafayette School Corporation Plan ("Plan"). [*Id*. at ¶ 5]. The Plan is a self-funded health and welfare plan providing group health

---

[1] Defendant Lafayette School Corporation filed a Motion to Join [DE 28] Defendant Anthem's Motion to Dismiss, which was granted on October 9, 2025. [DE 30].

benefits to its participants. [*Id*.]. The Claims Administrator for the Plan is Anthem.[2] [*Id*. at ¶¶ 6-8].

The Plan provides coverage for mental health services, including "Inpatient Services".[3] [DE 13 at ¶¶ 34, 36]. The Plan defines "Inpatient Services" to include those rendered "in a Hospital or any Facility that must be covered by state law." [*Id*. at ¶ 37]. The Plan defines a facility, which applies to both medical/surgical and behavioral health facilities, to include "a Hospital, freestanding Ambulatory Surgery Center, Chemical Dependency Treatment Facility, Residential Treatment Center, Skilled Nursing Facility, or mental health facility … [and] must be licensed as required by law, satisfy our accreditation requirements, and be approved by us." [*Id*. at 131]. The accreditation requirements mandate that a facility treating mental health conditions "be licensed as a residential treatment center in the state in which it is located and be accredited by [one of four organizations:] The Joint Commission (TJC), the Commission on Accreditation of Rehabilitation Facilities (CARF), the National Integrated Accreditation for Healthcare Organizations (NIAHO), or the Council on Accreditation (COA)." [*Id*. at 135].

B. *The Claims*

At all relevant times, Danielle B.'s minor daughter, I.B., was a beneficiary of the Plan. [DE 13 at ¶ 5]. I.B. was diagnosed with various mental health disorders. [*Id*. at ¶ 15]. On April 24, 2023, I.B. was admitted as a patient to blueFire, a licensed outdoor therapeutic program. [*Id*. at ¶¶

---

[2] It is Plaintiffs' belief that the Plan's sponsor is doing business as Blue Access PPO HAS Plan. [DE 13 at ¶ 6]. The Plan defines the "plan sponsor" as "the legal entity that has adopted the Plan and has authority regarding its operation, amendment, and termination." [*Id*].

[3] Since the Second Amended Complaint references the Plan, the Court can consider the Plan documents without converting the instant motion to one for summary judgment. *See Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (explaining that "[i]t is well settled that in deciding a Rule 12(b)(6) motion, a court may consider documents attached to a motion to dismiss ... if they are referred to in the plaintiff's complaint and are central to his claim") (internal quotations omitted).

16, 19]. Given the state of I.B.'s mental health condition at the time, it was necessary that she be transported by professionals specialized in transportation of at-risk youth with mental health issues. [*Id*. at ¶ 17]. As a result, she was transported by Right Direction Crisis Intervention ("Right Direction") from her home in Lafayette, Indiana to blueFire's facility in Idaho. [*Id*. at ¶ 18].

The treatment and services offered at blueFire were aimed at supporting teens struggling with behavioral health issues in a wilderness setting which supposedly offers a more intensive level of psychotherapy than ordinary inpatient care settings. [DE 13 at ¶ 21]. Patients, including I.B., were treated by licensed therapists. [*Id*. at ¶ 29]. I.B. received treatment there for approximately three months and was discharged on July 27, 2023. [*Id*. at ¶¶ 28, 32]. Plaintiffs were charged approximately $71,500 for care I.B. received from both blueFire and Right Direction. [DE 33 at 4]. Claims for those charges were submitted to Anthem for payment under the Plan. [DE 13 at ¶ 33]. Anthem initially denied the claims because the "procedure code [wa]s missing on the claim", the "provider type [wa]s not eligible", and the "procedure code [wa]s blank or ineligible". [*Id*. at ¶¶ 54-55].

Plaintiffs appealed the denial, and Anthem upheld it but because blueFire was not appropriately accredited by one of the four listed organizations as well as on the additional ground that the Plan excluded "[w]ilderness or other outdoor camps and/or programs." [DE 13 at ¶¶ 56-58].

*Procedural History*

As a result of Anthem's continued denial of Plaintiffs claims for treatment received from blueFire and Right Direction, Plaintiffs filed a lawsuit against Anthem, the School, and the Plan's sponsor, Blue Access PPO HAS, in Indiana state court on June 5, 2025. [DE 8]. The matter was removed to this Court on August 12, 2025. [DE 1]. The Second Amended Complaint, which is

currently operative, alleges a breach of contract and declaratory judgment claim (Count I) as well as a claim for a violation of the Mental Health Parity and Addition Equity Act ("Parity Act") (Count II). [DE 13 at ¶¶ 60-90]. More specifically, Plaintiffs allege that Defendants breached the terms of the Plan when they denied coverage of the treatment I.B. received from blueFire and Right Direction. [*Id*. at ¶ 62].  Plaintiffs also request that this Court enter a declaratory judgment that said treatment was covered by the Plan. [*Id*. at ¶¶ 61, 63]. As to Count II, Plaintiffs claim that Defendants violated the Parity Act by, *inter alia*, placing more restrictive requirements on mental health benefits under the Plan than for medical and surgical benefits. *See generally* [DE 13 at ¶¶ 64-90].

Despite answering the Second Amended Complaint, the School and Anthem have now moved to dismiss only Count II, the Parity Act violation, pursuant to Federal Rule Civil Procedure 12(b)(6). *See* [DE 24-25, 27-28].

## LEGAL STANDARD

A plaintiff survives a Rule 12(b)(6) motion to dismiss when "stat[ing] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw reasonable inferences that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "When examining a motion to dismiss, [a court] will accept as true all well-pleaded facts in the complaint and draw reasonable inferences in favor of the plaintiff." *Kap Holdings, LLC v. Mar-Cone Appliance Parts Co.*, 55 F.4th 517, 523 (7th Cir. 2022) (citation omitted). "But legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *Id.* (quoting *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011)).

**DISCUSSION**

Anthem and the School (hereinafter collectively referred to as "Defendants") have moved to dismiss Count II of the Second Amended Complaint. They allege that Plaintiffs' Parity Act claim fails because Plaintiffs have not identified either (1) medical or surgical treatment analogous to that of the mental health treatment I.B. received or (2) how Anthem imposed more stringent criteria on mental health benefits than on medical or surgical treatment. [DE 26 at 1].

The Parity Act requires that group health plans apply the same treatment limitations and lifetime and annual dollar limits for mental health benefits as they do for medical and surgical benefits. 29 U.S.C. § 1185a(a)(3)(A)(i)-(ii); *see Midthun-Henson on behalf of K.H. v. Grp. Health Coop. of S. Cent. Wisconsin, Inc*., 110 F.4th 984, 986 (7th Cir. 2024) (holding that the Parity Act, as an amendment to ERISA, requires that "health insurers place coverage for mental conditions on an equal footing with coverage for physical conditions"). Mental health financial requirements and treatment limitations must be no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan. § 1185a(a)(3)(A)(i)-(ii); *see also K.H.*, 110 F.4th at 986 (holding that "treatment limitations applicable to … mental health or substance use disorder benefits are no more restrictive than the … treatment limitations applied to substantially all medical and surgical benefits covered by the plan").

"The term 'treatment limitation' includes limits on the frequency of treatment, number of visits, days of coverage, or other similar limits on the scope or duration of treatment." 29 U.S.C. § 1185a(a)(3)(B)(iii). Its implementing regulations further elaborate that treatment limitations "include both quantitative treatment limitations, which are expressed numerically (such as 50 outpatient visits per year), and nonquantitative treatment limitations ..., which otherwise limit the scope or duration of benefits for treatment under a plan." 29 C.F.R. § 2590.712(a)(2). Some

examples of nonquantitative limitations on mental health or substance abuse disorder benefits include "restrictions based on geographic location, facility type, provider specialty, and other criteria that limit the scope or duration of benefits for services provided under the plan or coverage."§ 2590.712(c)(4)(ii)(H); *Stephanie R. v. Blue Cross & Blue Shield of Illinois*, 2025 WL 3648709, at *3 (N.D. Ill. Dec. 16, 2025)

"[T]here is no clear pleading standard for a Parity Act claim, especially in the Seventh Circuit." *C.W. v. United Healthcare Services, Inc.*, 2024 WL 3718203, at *2-4 (N.D. Ill. Aug. 8, 2024). However, district courts within the Seventh Circuit have concluded that "[t]he ultimate question in any Parity Act case is whether the plaintiff has plausibly alleged that his health insurance plan applies a separate or more restrictive treatment limitation to mental health and substance abuse services versus medical and surgical services …" *Smith v. Golden Rule Ins. Co.*, 526 F.Supp.3d 374, 388 (S.D. Ind. 2021); *Leo K. v. Anthem Blue Cross Blue Shield*, 2025 WL 1169054, at *1 (E.D. Wis. April 22, 2025); *C.M. v. Health Care Serv. Corp.*, 2025 WL 933847, at *3 (N.D. Ill. Mar. 27, 2025); *C.W.*, 2024 WL 3718203 at *3 (N.D. Ill. Aug. 8, 2024).

 *A.   Facial Challenge*

 As an initial matter, Defendants argue that Plaintiffs' claim that the Plan facially violates the Parity Act fails as matter of law because the very terms of the Plan contradict the allegations contained in the Second Amended Complaint. [DE 26 at 6].  Specifically, Defendants argue that Plaintiffs have claimed that the Plan requires mental and substance abuse services to be licensed, while not requiring the same of medical and surgical facilities. Defendants are incorrect. The Second Amended Complaint, along with Plaintiffs' response brief, alleges that "the Plan imposes specific, *enumerated accreditation requirements* on residential mental-health treatment centers, while imposing no comparable, enumerated accreditation requirements on skilled-nursing,

6

rehabilitation, or hospice facilities that provide medical or surgical care." *See* [DE 33 at 15] (emphasis added) (arguing that "Plaintiffs allege that the Plan's accreditation framework for mental-health facilities is more restrictive and onerous – not that medical or surgical facilities are covered without licensure"). Based on this, Plaintiffs have sufficiently pled a facial Parity Act violation as they have alleged that the Plan contains more restrictive accreditation requirements for residential mental health treatment centers than facilities for skilled-nursing, rehabilitation or hospice facilities. *See Smith*, 526 F.Supp.3d at 388 (explaining that "[t]he ultimate question in any Parity Act case is whether the plaintiff has plausibly alleged that his health insurance plan applies *a separate or more restrictive treatment limitation* to mental health and substance abuse services versus medical and surgical services …") (emphasis added).

Plaintiffs have also challenged the Plan's explicit exclusion for "Wilderness or other outdoor camps and/or programs" as a basis for denying claims for I.B.'s treatment at blueFire. [DE 13 at ¶ 48-50]. While it is unclear whether Plaintiffs are challenging this exclusion facially or as-applied, it appears to the Court that this exclusion does not violate the Parity Act on its face because "the exclusion categorically denies coverage for **all charges** incurred" from a "wilderness or other outdoor camps and/or program[]". *T. S.,* 2021 WL 981337, at *3, *aff'd*, 43 F.4th 737 (7th Cir. 2022). However, for the reasons discussed below, it would be premature for this Court to find that Plaintiffs have failed to state an as-applied challenge of this provision at this point in the case.

### B.  As-Applied Challenge

Turning to Defendants arguments regarding Plaintiffs' claims that the Plan, as applied, violate the Parity Act. Defendants argue that Count II fails because (1) Plaintiffs have not identified a medical or surgical treatment analogous to that of the mental health treatment received by I.B.

and because (2) they fail to identify how Anthem imposed more stringent criteria on mental health benefits than on medical or surgical treatment.

Looking first at the latter of Defendant's arguments, the Second Amended Complaint alleges that the Plan's enumerated accreditation requirements for residential mental health treatment facilities, facially and in application, impose a more restrictive standard on mental-health treatment. [DE 13 at ¶ 73].  It goes on to specifically allege, and specifically list, the four accreditation organizations that mental-health facilities must use and that the Plan does not have the same accreditation requirements for skilled nursing or hospice facilities. [*Id*. at ¶¶ 72, 74]. Given the allegations in the Second Amended Complaint, the Court is puzzled by Defendants' position that Count II should fail because Plaintiffs have not identified how the Plan imposes more stringent criteria on mental health benefits than on medical or surgical treatment. *See T. S.*, 2021 WL 981337, at *5 (*citing* 29 C.F.R. § 2590.712(c)(4)(i)) (explaining that in order to plausible plead a Parity Act violation, "a plaintiff must [allege] that a defendant imposed "a treatment limitation" more stringently for "mental health or substance use disorder benefits" than it does for "medical/surgical benefits").

Next, Defendants also argue that Count II should fail because Plaintiffs have not specifically identified any medical or surgical treatment under the Plan comparable to type of treatment provided to I.B. by blueFire.  [DE 26 at 9]. Defendants cite *Smith v. Golden Rule Insurance Company*, 526 F.Supp.3d 374 (S.D. Ind. March 11, 2021) in support and emphasize that the plaintiffs there identified specific medical tests that were treated differently from mental health tests, but here "Plaintiff's Second Amended Complaint … lacks the specificity, and, and therefore, fails to state a claim under the Parity Act." [DE 26 at 9]. Again, the Court disagrees with Defendants. Plaintiffs have adequately alleged the provisions of the Plan that place more stringent

requirements on mental health treatment than on medical or surgical treatment and have done so with enough specificity to satisfy Rule 12(b)(6). *See C.W.*, 2024 WL 3718203 at *3 (N.D. Ill. Aug. 8, 2024) (holding that the district court must ask "does the plaintiff plausibly allege that their health insurance plan applies a separate or more restrictive treatment limitation to mental-health and substance-use services versus medical/surgical services?").

Moreover, district courts within the Seventh Circuit disfavor dismissal of Parity Act claims at the pleading stages because the Act requires insurers to maintain comparative analyses demonstrating that any treatment limitations are applied no more stringently to mental health benefits than to medical surgical benefits. And often, plaintiff obtains those materials through discovery. *Rula A.-S. v. Aurora Health Care*, 2021 WL 3116143, at *5 (E.D. Wis. July 22, 2021). Plaintiffs have alleged, and Defendants do not dispute, that the comparative analyses have not been provided at this point. [DE 33 at 14]. As Plaintiffs rightfully argue, all that is required right now is that they "allege[] concrete facts giving rise to a reasonable inference of disparity," and it will not be until Defendants disclose, through discovery, the analyses that shows how Defendants "appl[y] accreditation standards to medical or surgical facilities and how it enforces the wilderness exclusion." [*Id.*]; *see Rula A.-S.*, 2021 WL 3116143, at *5 (explaining that "[a]t this very early stage of the proceedings … the Court cannot place a burden on plaintiff-patients to plead specific details to show that the Plan treated mental health or substance use disorder benefits differently than "substantially all" medical and surgical benefits covered by the Plan" especially without "requested [Plan] documents which would allow Plaintiffs to better evaluate Defendants' compliance with the [Parity Act]"). For this reason as well, the Court finds that Plaintiffs have plausibly stated a Parity Act violation against Defendants.

**CONCLUSION**

For the foregoing reasons, the Court **DENIES** Defendants Motion to Dismiss [DE 25]. Accordingly, the entirety of the Second Amended Complaint remains pending against each Defendant.

SO ORDERED.

ENTERED: April 23, 2026

/s/ GRETCHEN S. LUND
Judge
United States District Court